| | | |
|---|---|---|
| JOSE ESTRADA, and MIGUEL REYNA AMARO, Individually and on Behalf of All Others Similarly Situated, Plaintiffs, | § § § § § | CIVIL ACTION NO. 3:13-cv-00372 |
| V. | § § | JURY TRIAL DEMANDED |
| HOUSTON PIZZA VENTURE, LP D/B/A PAPA JOHN'S; HPV-C, LLC D/B/A PAPA JOHN'S; HPV STAFF, LLC; FRANK CARNEY; MARTIN HART; and KEITH SULLINS. Defendants. | § § § § § § | |

---

## PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION AND AUTHORIZATION FOR NOTICE

---

Filed By:

KENNEDY HODGES, L.L.P.
Galvin B. Kennedy
*Attorney-in-Charge for Plaintiffs*
State Bar No. 00796870
Federal Bar No. 20791
KENNEDY HODGES, LLP
711 West Alabama Street
Houston, Texas 77006
Telephone: 713-523-0001
Facsimile: 713-523-1116
Gkennedy@kennedyhodgs.com

OF COUNSEL:
Beatriz Sosa-Morris
State Bar No. 24076154
Federal Bar No. 1552137
KENNEDY HODGES, LLP
711 W. Alabama Street
Houston, Texas 77006
Telephone: 713-523-0001
Facsimile: 713-523-1116
Bsosamorris@kennedyhodges.com

# Table of Contents

Table of Authorities ................................................................................................ ii

I.  INTRODUCTION ............................................................................................... 1

II.  SUMMARY OF DEFENDANTS' BUSINESSES AND PLAINTIFFS' JOBS ................... 2

   A.  Minimum Wage Violation ................................................................................ 5

   B.  Violation of the Notification Provision of the Tip Credit Privilege. ....................... 9

   C.  Overtime Violation .......................................................................................... 11

IV.  Argument and Authorities for Conditional Certification and Notice ................................ 12

   A.  Conditional Certification is the Preferred Methodology ......................................... 13

   B.  Under *Lusardi*, a class of similarly situated employees exists; therefore, conditional certification of the collective action is proper. ....................................................... 14

      1.  There is a reasonable basis for crediting the assertions that other aggrieved individuals exist. ............................................................................................... 15

      2.  The aggrieved employees are similarly situated to the named Plaintiffs in relevant respects given the claims asserted. .................................................................... 16

      3.  Other delivery drivers working for the Defendants want to opt-in to this lawsuit. .... 18

   C.  Courts in this district have afforded relief to delivery drivers under facts nearly identical to this case ............................................................................................................ 20

   D.  The proposed notice is timely, accurate, and informative.  The notice should be sent by regular mail and email. ............................................................................................ 21

   E.  The proposed discovery is essential for service of timely notice. ............................... 24

V.  Conclusion ......................................................................................................... 25

# Table of Authorities

**Cases**

*Aguirre v. SBC Communication, Inc.*, 2006 WL 964554 (S.D. Tex. 2006)................................15

*Albanil v. Coast 2 Coast, Inc.,* CIV.A. H-08-486, 2008 WL 4937565 (S.D. Tex. Nov. 17, 2008) ................................................................................................................................. 13, 14

*Allen v. McWane*, 2006 WL 3246531 (E.D. Tex. Nov. 2006) ....................................................13

*Altier v. Worley Catastrophe Response, LLC,* 2012 WL 161824, at *27 (E.D.La. Jan.18, 2012) 22

*Barajas v. Acosta*, 2012 WL 1952261 (S.D. Tex. May 30, 2012) .............................................14

*Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464 (5th Cir. 1979)...................................4, 11

*Bass v. PJComn Acquisition Corp.*, No. 09-CV-01614-REB-MEH, 2010 WL 3720217 (D. Colo. Sept. 15, 2010) ................................................................................................................20

*Bernal v. Vankar Enterprises, Inc.*, 579 F. Supp. 2d 804, 807-808 (W.D. Tex. 2008). ..........9, 10

*Bursell v. Tommy's Seafood Steakhouse*, 2006 WL 3227334 (S.D. Tex. Nov. 3, 2006)...............4

*Butler v. Directsat USA, LLC*, 876 F. Supp. 2d 560, 575 (Dist. MD April 10, 2012).................22

*Cameron-Grant v. Maxim Healthcare Servs. Inc.*, 347 F.3d 1240 (11th Cir. 2003)...................15

*Castillo v. Hernandez*, 2010 WL 4595811 at *7 (W.D. Tex. Nov. 4, 2010)................................24

*Chisolm v. Gravitas Rest. Ltd.,* CIV.A. H-07-475, 2008 WL 838760 (S.D. Tex. Mar. 25, 2008)... …………………………………………………………………………………………4, 9, 21

*Chung v. New Silver Palace Restaurant, Inc.*, 246 F. Supp. 2d 220 (S.D.N.Y. 2002)..................4

*Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914 (D. Ariz. 2010)......................................................14

*Covey v. Iron Cactus*, Case 1:12-cv-00111-SS, Doc. 43, Western District of Texas Austin Division (May 18, 2012) ......................................................................................................20

*Darrow v. WKRP Mgmt., LLC*, No. 09-CV-01613-CMA-BNB, 2012 WL 638119 (D. Colo. Feb. 28, 2012).........................................................................................................................20

*Davis v. Mostyn Law Firm, P.C.,* 2012 WL 163941 at *11 (S.D. Tex. Jan. 19, 2012) ...............24

*Deloitte & Touche, LLP Overtime Litig.*, 2012 WL 340114 at *2 (S.D.N.Y. Jan. 17, 2012).......21

*Denney v. Lester's, LLC*, 2012 WL 3854466 at *4 (E.D. Mo. Sept. 5, 2012).............................22

*Dreyer v. Baker Hughes Oilfield Operations, Inc.*, 2008 WL 5204149 (S.D.Tex. Dec. 11, 2008) .........................................................................................................................................14

*Dybach v. State of Florida Dept. of Corrections*, 942 F.2d 1562 (11th Cir.1991).....................16

*Eggelston v. Sawyer Sportsbar, Inc.*, 2010 WL 2639897 (S.D. Tex. June 28, 2010)..............21, 24

*England v. New Century Financial Corporation*, 370 F. Supp. 2d 504 (M.D. La. 2005)...........16

*Falcon v. Starbuck Corp.*, 580 F. Supp. 2d 528 (S.D. Tex. 2005) .............................................13

*Flowers v. MGTI, LLC* , 2012 WL 1941755 (S.D. Tex. May 29, 2012) .....................................14

*Grayson v. K Mart Corp.*, 79 F.3d 1086 (11th Cir.1996) ..........................................................15

*Gustavus v. Cazos, Inc.*, 774 F. Supp.2d 856 (S.D. Tex. 2011)................................................21

*Guzman v. Varco Intern., Inc.*, CIV.A. H-01-4000, 2002 WL 32639237 (S.D. Tex. May 30, 2002)................................................................................................................................13

*Heckler v. DK Funding, LLC*, 502 F.Supp.2d 777 (N.D. Ill. 2007) ...........................................14

*Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208 (11th Cir. 2001) ....................................13, 12

*Hoffmann-La Roche v. Sperling*, 493 U.S. 165 (1989) .........................................................12, 21

*Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242 (W.D. Mich.2011)...............................................16, 19

*Johnson v. Big Lots Stores, Inc.*, 2007 WL 5200224 (E.D. La. 2007)........................................16

*Johnson v. TGF Precision Haircutters, Inc.,* 319 F. Supp. 2d 753, 754 (S.D. Tex. 2004)...........13

ii

*Jones, JGC Dallas LLC,* Case: 3:11-cv-02743-O-BH, 2012 WL 6928101 at *5 (N. D. TX November 29, 2012)..................................................................................................23

*Jones v. JGC Dallas LLC,* Case: 3:11-cv-02743-O-BH, Doc. No. 141, (January 23, 2013)........23

*Kelly v. Bank of Am., N.A.,* 2011 WL 7718421at *2 (N.D. Ill. Sept. 23, 2011)        23

*King v. GE Co.,* 960 F.2d 617 (7th Cir. 1992)..............................................................................13

*Luiken v. Domino's Pizza, LLC,* CIV.09-516 (DWF/AJB), 2010 WL 2545875 (D. Minn. June 21, 2010).........................................................................................................................20

*Lujan v. Cabana Mgmt., Inc.,* 2011 WL 3235628, at *3 n. 3 (E.D.N.Y. July 27, 2011)..............22

*Lusardi v. Xerox Corp.,* 118 F.R.D. 351 (D.N.J. 1987).................................................. 13, 14, 16

*Luvianos v. Gratis Cellular, Inc.,* 2012 WL 6737498 (S.D. Tex. Dec. 10, 2012) report .............24

*Maynor v. Dow Chem. Co.,* 2008 WL 2220394 (S.D.Tex. May 28, 2008)....................................14

*McCarragher v. Ryland Group, Inc.,* CIV.A. 3-11-55, 2012 WL 4857575 (S.D. Tex. Oct. 11, 2012)..................................................................................................... 13, 14, 24

*Nero v Industrial Molding Corp.,* 167 F.3d 921 (5th Cir. 1999)...................................................9

*Nieddu v. Lifetime Fitness, Inc.,* CIV.A. H-12-2726, 2013 WL 5530809 (S.D. Tex. Sept. 30, 2013)......................................................................................................................13

*Nobles v. State Farm Mut. Auto. Ins. Co.,* 2011 WL 3794021, at *10 (W.D.Mo. Aug.25, 2011). ............................................................................................................................22

*O'Brien v. Ed Donnelly Enters., Inc.,* 2006 WL 3483956 (S.D. Ohio Nov.30, 2006)..................18

*Page v. Nova Healthcare Mgmt., L.L.P.,* CIV.A. H-12-2093, 2013 WL 4782749 (S.D. Tex. Sept. 6, 2013).............................................................................................................13

*Pedigo v. 3003 S. Lamar, LLP,* 666 F. Supp. 2d 693, 698 (W.D. Tex. 2009) .............................19

*Perrin v. Papa John's Intern., Inc.,* 4:09CV01335 AGF, 2011 WL 4089251 (E.D. Mo. Sept. 14, 2011).........................................................................................................................20

*Phelps v. MC Communications, Inc,* 2011 WL 3298414 (D. Nev. Aug. 1, 2011) ......................22

*Pippins v. KPMG LLP,* 2012 WL 19379, at *14 (S.D.N.Y. January 3, 2012)............................22

*Plewinski v. Luby's Inc.,* 2010 WL 1610121 (S.D. Tex. Apr. 21, 2010)......................................21

*Prater v. Commerce Equities Management Co., Inc.,*  2007 WL 4146714 (S.D. Tex. Nov. 19, 2007).............................................................................................................15

*Ryan v. Staff Care, Inc.,* 497 F. Supp. 2d 820 (N.D. Tex. 2007).................................................16

*Saint-Jean v. District of Columbia,* 846 F. Supp. 2d 247...........................................................7

*Santiago v. Amdocs, Inc.,* 2011 WL 6372348 * 8 (N.D. Cal. Dec. 19, 2011)..............................22

*Shaffner v. Cash Register Sales & Serv. of Houston,* 2006 WL 1007542, at *1 (S.D.Tex. Apr. 17, 2006)..................................................................................................................20

*Simmons v. T–Mobile,* 2007 WL 210008 (S.D.Tex. Jan.24, 2007).............................................19

*Sims v. Housing Authority City of El Paso,* 2010 WL 2900429, at *5 (W.D.Tex. July 19, 2010)24

*Smith v. Pizza Hut, Inc.,* No. 09-CV-01632-CMA-BNB, 2012 WL 1414325 (D. Colo. Apr. 21, 2012)..................................................................................................................20

*Thiess v. GE Capital Corp.,* 267 F.3d 1095 (10th Cir. 2001) .....................................................13

*Tice v. AOC Senior Home Health Corp.,* 826 F. Supp. 2d 990, 996 (E.D. Tex. 2011) ...............24

*Tolentino v. C & J Spec-Rent Services Inc.,* 716 F. Supp. 2d 642, 655 (S.D. Tex. 2010)...... 16, 24

Vankar, 2008 WL 791963 ...........................................................................................................9

*Villarreal v. St. Luke's Episcopal Hospital,* 751 F.Supp.2d 902 (S.D.Tex.2010)........................19

*Villatoro v. Kim Son Rest., L.P.,* 286 F. Supp. 2d 807 (S.D. Tex. 2003)....................................13

*Walker v. Honghua Am., LLC,* 870 F. Supp. 2d 462, 473 (S.D. Tex. 2012)...............................24

*Wass v. NPC Intern., Inc.,* 09-2254-JWL, 2011 WL 1118774 (D. Kan. Mar. 28, 2011) ............20

*White v. Integrated Elec. Technologies, Inc.,* 2013 WL 2903070 at *9 (E.D. La. June 13, 2013) ...................................................................................................................22, 23

**Statutes**

29 C.F.R. § 531.35 ...................................................................................................................7
29 C.F.R. §531.50 ...................................................................................................................4
29 U.S.C. § 203(m) .................................................................................................. 3, 4, 5, 8, 9
29 U.S.C. § 206(a)(1)(C) .........................................................................................................3
29 U.S.C. § 215(a)(3) .............................................................................................................21
29 U.S.C. § 216(b) .................................................................................................................12

**Other Authorities**

Matthew W. Lampe & E. Michael Rossman, *Procedural Approaches for Countering the Dual-Filed FLSA Collective Action and State-Law Wage Class Action*, LAB. LAW. Winter/Spring 2005 311 .............................................................................................................................20

# I.  INTRODUCTION

Jose Estrada and Miguel Reyna Amaro ("Plaintiffs") filed this case against Houston Pizza Venture, LP, d/b/a Papa John's, HPV-C LLC d/b/a Papa John's, HPV Staff, LLC, Frank Carney, Martin Hart, and Keith Sullins ("Defendants") as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on October 16, 2013. The Plaintiffs are deliver drivers at the Defendants' restaurants, Papa John's. Plaintiffs utilized their own vehicles to make deliveries to Defendants' customers.[1] The basis of their complaint centers on the Defendants' long-standing abuse of the tip credit privilege under the FLSA, the minimum wage provisions of the FLSA, and the overtime provisions of the FLSA. Defendants required that Plaintiffs pay for company uniforms and did not properly reimburse Plaintiffs for expenses incurred on behalf of Defendants when delivering Defendants' customers' orders.[2] This practice violates the FLSA. By doing so, Defendants sacrificed their right to rely on the tip credit to satisfy their obligations to pay minimum and overtime wages.

This case is one belonging to a trend of FLSA cases alleging that pizza delivery drivers are not adequately reimbursed for their travel expenses, and consequently, are being deprived of their minimum wages.[3] Just as those below mentioned pizza delivery driver cases were conditionally certified, this matter should likewise be conditionally certified in order to give other drivers the opportunity to exercise their rights by joining this lawsuit.

Plaintiffs seek to recover their unpaid compensation, liquidated damages, attorneys' fees, costs, and interests. The Plaintiffs also seek to represent all similarly situated employees, current and former, of the Defendants who were subjected to the same illegal compensation practices

---

[1] Exhibits "A," "B," and "C" ¶ 4 (Declaration of Estrada, Amaro and Palacios, respectively).
[2] Exhibits "A," "B," and "C" ¶ 4 (Declaration of Estrada, Amaro and Palacios, respectively); *see also* Exhibit "D" IRS guidelines.
[3] *See* page 20 infra.

during the three (3) years prior to the Court granting this Motion. So far, three employees have joined this lawsuit and confirmed this practice takes place at all of Defendants' Papa John's restaurants.[4]

To participate in this case, an interested employee must "opt-in" by filing a written consent to join. *See* 29 U.S.C. § 216(b). In order to decide whether to exercise their rights and opt-in to this case, the class of similarly situated employees needs to be informed of the pendency of this action and be provided with the appropriate documentation to allow them to participate. For the reasons stated herein, the Plaintiffs request that this Court conditionally certify this case as a collective action under 29 U.S.C. § 216(b), order the requested discovery in order to identify the potential opt-in plaintiffs, and authorize the issuance of the Plaintiffs' proposed notice[5] to be served upon all of the delivery drivers via first class mail and electronic mail. Further, Plaintiffs ask the Court to rule on this motion urgently as the statute of limitation is running on the claims of class members who have not yet joined this lawsuit.

## II.      SUMMARY OF DEFENDANTS' BUSINESSES AND PLAINTIFFS' JOBS

Defendants operate as a franchisee of Papa John's in the Southern District of Texas as far north as College Station, Huntsville, and Conroe, and as far south as Galveston, Texas City, and Lake Jackson.[6] Defendant Sullins is the president[7] of Houston Pizza Venture, LP and also co-owns twenty (20) Papa John's in Sacramento, California and eighteen (18) Papa John's in

---

[4] Plaintiff Estrada, Plaintiff Amaro, and opt-in Plaintiff Palacios.
[5] *See*, Exhibits "E" and "F." Exhibit "E" is the proposed notice of rights, which summarizes the FLSA violations at issue in this case and informs the potential opt-in plaintiffs of their rights to join this case. Due to the majority of class members speaking Spanish, Plaintiffs propose the notice go out in English and Spanish. Exhibit "F" is the proposed consent form for the opt-ins to sign and return to the Plaintiffs' counsel to join this action. Likewise, Plaintiffs' propose the consent form be sent in English and Spanish.
[6] Exhibit "G" ("Houston Pizza Venture operates Papa John's Pizza in many neighborhoods: Our stores can be found in greater Houston, as far north as College Station, Huntsville, and Conroe, and as far south as Galveston, Texas City, and Lake Jackson.").
[7] Exhibit H (Publication, "Sullins Earns his Piece of the Pie.").

Hawaii.[8]  Houston Pizza Venture, LP is the second largest Papa John's pizza franchise group in the world.[9]  Further, Houston Pizza Venture was the 2013 Franchisee of the Year.[10]  It is believed that HPV operates approximately seventy (70) Papa John's pizzerias in southern Texas.[11]

As delivery drivers, Plaintiffs delivered pizzas among other food and drink items to Defendants' customers.[12]  Plaintiffs utilize their own vehicles when making deliveries.[13]  When the Plaintiffs are not delivering pizzas, they are working in the store cleaning, washing kitchen utensils, boxing pizzas, breaking down boxes, and stocking among other activities.[14]  All other delivery drivers had the same job duties as Plaintiffs.[15]  The Defendants failed to pay both the minimum wage and overtime at the rates established in the FLSA.

### III.    SUMMARY OF FLSA VIOLATIONS

Plaintiffs do not seek a ruling on the merits; however, they offer this discussion of the alleged FLSA violations to put their claim in context and to demonstrate to the court that other employees were subject to the same policies.

Defendants relied on of the tip credit available in 29 U.S.C. § 203(m).[16]  The FLSA requires employers to pay a minimum wage of $7.25[17] an hour for each hour an employee works.[18]  However, under 29 U.S.C. § 203(m), employers are permitted to take advantage of a "tip credit" in order to meet this minimum wage requirement with respect to "tipped employees."

---

[8] Exhibit "H" (Publication, "Sullins Earns his Piece of the Pie.").
[9] Exhibit "H" (Publication, "Sullins Earns his Piece of the Pie.").
[10] Exhibit "I" (Publication from bizjournals.com "Papa John's name franchisees of the year").
[11] Exhibit "R" (Publication, "Who is Who Frank Carney").
[12] Exhibits "A," "B," and "C" ¶ 2 (Declaration of Estrada, Amaro and Palacios, respectively).
[13] Exhibits "A," "B," and "C" ¶ 4 (Declaration of Estrada, Amaro and Palacios, respectively).
[14] Exhibits "A," "B," and "C" ¶ 3 (Declaration of Estrada, Amaro and Palacios, respectively).
[15] Exhibits "A," and "C" ¶ 9 (Declaration of Estrada Palacios, respectively); Exhibit "B" ¶ 8 (Declaration of Amaro).
[16] *See also* 29 C.F.R. § 531.50; s*ee also*, Exhibits "J," "K," and "L," (Paystubs for Estrada, Amaro, and Palacios, respectively).
[17] At all times relevant to this lawsuit, the federal minimum wage has been $7.25. *See*, Exhibit "P," (DOL website regarding minimum wage).
[18] *See* 29 U.S.C. § 206(a)(1)(C).

The tip credit is a maximum of $5.12.[19]  Using the "tip credit," an employer may pay a tipped employee as little as $2.13[20] an hour (and not a penny less) instead of $7.25 an hour, but only if the employee makes at least minimum wage when the hourly wage of $2.13 and the employee's tips combine to equal the minimum wage.[21]  The maximum tip credit available to Defendants for their tipped employees was $5.12 an hour even if the tips earned by the server are greater than $5.12 per hour.[22]  Similarly, using the "tip credit" an employer may pay a tipped employee as little as $5.76 per hour as a direct wage for overtime hours worked, but only if the employee makes at least an additional $5.12 per hour in tips.[23]

The employer may take the tip credit only if all conditions are met.  First, the employer must pay a cash wage of at least $2.13 per hour.[24]  Second, all tips received by the employee must be either retained by the employee or contributed to a tip pool between other tip-eligible employees.[25]  Third, the employer must inform the employee of the statutory requirements of the tip credit prior to using the credit. 29 U.S.C. § 203(m).  These prerequisites are strictly construed.[26]  Employers bear the burden of proving their entitlement to a tip credit.[27]

Defendants' policies make the application of the tip credit improper in this case.  First,

---

[19] *See* 29 U.S.C. § 203(m).

[20] $7.25(minimum wage)-$5.12(tip credit)=$2.13.

[21] *See* 29 U.S.C. § 203(m); in other words, the employee's tips must be at least $5.12 in order for the employer to take the $5.12 tip credit.

[22] *See* 29 U.S.C. § 203(m); *See also,* 29 C.F.R. §531.50, §531.59; this means that even if the tipped employee makes, for example, $10.00 in tips per hour, the employer still has to pay a direct wage of at least $2.13 per hour.

[23] At all relevant times during this lawsuit, the overtime rate has been $10.88 per hour.  Since the maximum tip credit is $5.12, employers must pay a direct wage of $5.76 ($10.88 - $5.12) for all overtime hours.  *See* 29 U.S.C. § 203(m); *See also,* 29 C.F.R. §531.50, §531.59

[24] *See* 29 U.S.C. § 203(m); *See also,* 29 C.F.R. §531.50, §531.59; *See also, Chisolm v. Gravitas Rest. Ltd.,* CIV.A. H-07-475, 2008 WL 838760 (S.D. Tex. Mar. 25, 2008) ("This tip credit is not automatic. An employer may only take the tip credit if it: (1) pays a cash wage of at least $2.13 per hour; (2) informs its employees of the FLSA's tip credit provisions; (3) permits its employees to retain all their tips; and (4) ensures that the cash wage plus the tip credit equal at least the minimum wage each week.") (*citing,* 29 U.S.C. § 203(m)).

[25] *See* 29 U.S.C. § 203(m); *See also,* 29 C.F.R. §531.50, §531.59.

[26] *See Bursell v. Tommy's Seafood Steakhouse*, 2006 WL 3227334 (S.D. Tex. Nov. 3, 2006) (quoting *Chung v. New Silver Palace Restaurant, Inc.*, 246 F. Supp. 2d 220, 228 (S.D.N.Y. 2002)).

[27] *See Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979);  *Reich v. Priba Corp.*, 890 F. Supp. 586, 595-96 (N.D. Tex. 1995);  *Chisolm v. Gravitas Restaurant, Ltd.*, 2008 WL 838760, at *3 (S.D. Tex. March 25, 2008).

Defendants improperly applied the tip credit by not paying the required $2.13 an hour.[28]  Second, Defendants took delivery drivers' tips when they required the drivers to pay for gasoline and automobile expenses, but did not properly reimburse them.[29]  Third, Defendants, did not inform the drivers prior to using the tip credit of the statutory requirements of the tip credit provision.[30]

## A. Minimum Wage Violation

     **i.**    **Defendants' improper reimbursement for automobile expenses results in drivers being paid less than $2.13 per hour in violation of 203(m), and consequently disqualifies Defendants from using the tip credit privilege.**

The attached Team Member Checkout Reports for Plaintiff Estrada for the week of August 28, 2013 to September 3, 2013 aptly demonstrates the type of violation at issue in this case.[31]  Defendants' improperly reimbursed drivers for automobile expenses and as a result, did not pay a direct cash wage of at least $2.13 per hour as required by 29 U.S.C. §203(m).  Plaintiff Estrada is paid at a rate of $4.75 per "road hour" and $7.25 per "store hour."[32]  When a pizza is ready to be delivered, Plaintiff Estrada enters into the time clock that he is departing the store to make a delivery; upon his return to the store, he enters into the time clock that he has returned.[33]  During his departure he is paid at the road hour rate of $4.75 per hour, plus an additional $1.05 or so per delivery.[34]  While Plaintiff Estrada is working at the store cleaning, folding pizza boxes, washing dishes, stocking products, and doing other non-tip producing activities, he is paid at a direct wage of $7.25 per hour.[35]  As the Team Member Checkout Reports illustrate, for the week of August 28, 2013 to September 3, 2013, Plaintiff Estrada worked 6.16 store hours and

---

[28] *Id*. at ¶ 6; *See also*, Exhibits "J," "K," and "L," (Paystubs for Estrada, Amaro, and Palacios, respectively).
[29] Exhibits "A," "B," and "C" ¶ 4 (Declaration of Estrada, Amaro and Palacios, respectively).
[30] Exhibits "A," "B," and "C" ¶ 7 (Declaration of Estrada, Amaro and Palacios, respectively).
[31] Exhibit "M" (Estrada's Team Member Checkout Reports for the week of 8/28/13 to 9/3/13).
[32] *See* Exhibit "J" (Copy of Estrada's paystub).
[33] Exhibit "A," ¶ 3 (Declaration of Estrada).
[34] *See* Exhibit "J" (Copy of Estrada's paystubs); *see also*, Exhibit "A," ¶ 4 (Declaration of Estrada); *see also*, Exhibit "M" (Estrada's Team Member Checkout Reports for the week of 8/28/13 to 9/3/13).
[35] Exhibit "A," ¶ 3 (Declaration of Estrada).

11.34 road hours.[36]  He delivered 46 customers' orders during this time.[37]  Defendants paid Plaintiff Estrada a direct wage of $146.83[38] for the week of August 28, 2013 to September 3, 2013.  Defendants had to pay "store hours" at a minimum rate of $7.25 per hour since the time spent at the store by Plaintiff was on non-tip producing activities.[39]  Further, the time spent at the store doing non-tip producing activities is on average constantly over 20%[40] of Plaintiff Estrada's work week and as such should have been compensated at a rate of at least $7.25 per hour.[41]  Consequently, the main issue is whether the road hours were paid correctly.  Plaintiffs contend that Defendants' misused the tip credit privilege by inadequately reimbursing Plaintiffs and other delivery drivers for expenses.

For road hours, Plaintiff Estrada was compensated $102.17[42] for the above referenced week.  During that week, Plaintiff Estrada drove 210[43] miles according to Defendants' records.[44]  The IRS has published the standard mileage rate for 2013 as 56.5 cents per mile.[45]  In this case,

---

[36] Exhibit "M" (Estrada's Team Member Checkout Reports for the week of 8/28/13 to 9/3/13).

[37] *Id.*

[38] 6.16 hours at $7.25($44.66) + 11.34 hours at $4.75 ($53.87) + 46 pizza deliveries at $1.05($48.30)  = $146.83.

[39] However, often times, Defendants deducted uniforms which brought the delivery drivers' rates below $7.25 per hour.

[40] In this example, during the week of 8/28/13 to 9/3/13, Plaintiff Estrada spent 35.2% of his time on non-tip producing activities.  6.16 store hours divided by 17.5 total work hours for 8/28/13 to 9/2/13 = 35.2%.

[41] As a matter of policy, the Defendants used the delivery drivers for janitorial and maintenance duties at each of their restaurants.  This work included cleaning the kitchen, bathrooms, and seating area of the restaurants.  Also, drivers would work at the store stocking, breaking down boxes, mopping, and sweeping.  Such non-tip producing work routinely consumed more than 20% of the waiter's schedule.  This can be calculated by dividing "store hours" paid at $7.25 per hour by total work hours in any given week, and such information is clear from the face of the paystubs.

[42] 11.34hours at $4.75 per hour ($53.87)  + $1.05 per delivery for 46 deliveries ($48.30) = $102.17.

[43] The mileage is calculated by Defendants based upon an average of 5 miles per trip.  For purposes of this calculation, Plaintiffs are using the Defendants' mileage traveled average as written on the Team Member Checkout Reports.  The 9/2/13 Checkout Report shows 17 trips, but only calculates 65 miles instead of 85 miles.  On 9/2/13 four of the 17 orders were delivered in pairs, meaning Plaintiff Estrada logged taking two orders out at once.  Therefore, Defendants' mileage estimate was for 13 deliveries at 5 miles a delivery, thus 65 miles.  By using Defendants' estimated mileage per trip, Plaintiffs are not waiving their right to calculate damages using a different method in the future, nor are Plaintiffs conceding that Defendants' estimation, or method of calculating mileage driven is correct.

[44] Exhibit "M" (Estrada's Team Member Checkout Reports for the week of 8/28/13 to 9/3/13) (showing "miles driven").

[45] Exhibit "D" (IRS mileage reimbursement rates, currently .565 per mile).

6

Plaintiff Estrada was paid $102.17[46] as a direct wage from the Defendants, but his expenses incurred in operating his vehicle were $118.65.[47] Consequently, Plaintiff Estrada was paid a *negative* wage of $16.48 for his 11.34 hours worked on the week of August 28, 2013 through September 3, 2013.[48] That is, after accounting for his travel costs, Plaintiff Estrada *paid Defendants* $16.48 to work for them as a delivery driver in the above referenced week.

This pay practice is in violation of the FLSA in two ways. First, it brings Plaintiff Estrada's direct wage pay below $2.13 per hour to a negative $1.45[49] per hour in violation of the tip credit provision that the employer pay at least $2.13 per hour. The FLSA mandates that employers pay employees the minimum wage "free and clear" of other monetary obligations to the employer.[50] "Under the FLSA any money that the employee 'kicks back' directly or indirectly to the employer or another person for the employer's benefit must be excluded from the calculation of the employee's actual wages."[51] Consequently, although the purported payment to Plaintiff Estrada is $4.75 per hour, the actual wage earned, when excluding the kickbacks from the calculation, falls below $2.13 per hour.[52] This policy of inadequately compensating delivery drivers is company-wide and applies to all other delivery drivers employed by Defendants.[53]

---

[46] 11.34 hours at $4.75 per hour ($53.87) + $1.05 per delivery for 46 deliveries ($48.30) = $102.17.
[47] $0.565 per mile times 210 miles driven on 8/28/13 to 9/3/13 = $118.65.
[48] $118.65-$102.17= -$16.48.
[49] Negative $16.48 divided by 11.34 hours is equal to a negative $1.45 per hour.
[50] See 29 C.F.R. § 531.35 ("Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee."); *see also*, Exhibit "N," (DOL Fact Sheet #47 stating, "Wages must be paid free and clear of impermissible deductions -- such as the costs of operating the vehicle or traveling on the road -- that would reduce pay below the federal minimum. Deductions that are impermissible when they reduce pay below the federal minimum include the cost of gas, oil, tires, repairs to the truck, tolls or the cost of food or lodging for the employees while they are traveling.").
[51] *Saint-Jean v. District of Columbia*, 846 F. Supp. 2d 247, 257 (D.D.C. 2012).
[52] Exhibit "M," and "O," (Team Member Checkout Reports for Estrada, and Palacios, respectively); *see also*, Exhibit "A," ¶ 9 (Plaintiff Estrada's Declaration, stating these pay practices are companywide).
[53] Exhibit "A," and "C" ¶ 9 (Plaintiff Estrada and Palacios' Declaration); Exhibit B ¶ 8 (Amaro's Declaration).

ii. **Defendants' inadequate reimbursement of automobile expenses necessitated drivers to use their tips to pay for gasoline which constitutes a taking of tips by an employer in violation of 203(m). Further, Plaintiffs paid for kickbacks to Defendants' such as uniforms, cell phones, and GPS devices from their tips, which likewise constitute a taking of employees' tips.**

Section 203(m) of the FLSA states that the tip credit privilege "shall not apply with respect to a tipped employee unless . . . ***all tips received by such employee have been retained by the employee***," with the exception of a valid tip pool.[54]  (emphasis added).  Section 531.52 of the regulations provides:

> Tips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA. The employer is **prohibited from using an employee's tips**, whether or not it has taken a tip credit, **for any reason** other than that which is statutorily permitted in section 3(m): As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool.[55]

To emphasize this point, the **only ways** an employer is permitted to use its employee's tips is (1) to claim the tip credit itself or (2) to distribute the tips through a valid tip pool.  *Id.*  If the employee does not retain all tips, the tip credit privilege shall not apply, and the employer will have to comply with the full minimum wage obligation, currently $7.25 per hour.[56]  Here, the Plaintiffs and other drivers did not participate in a tip pool, but they did have to pay for gasoline, which was used to make deliveries for Defendants' customers, and cell phone bills out of their tips.[57]  Under the FLSA, management and owners are never allowed to misappropriate their employees' tips.[58]

---

[54] Plaintiffs were not subject to a tip pool.
[55] 29 C.F.R. § 531.52 (emphasis added).
[56] Exhibit "P" (DOL website stating current minimum wage is $7.25 per hour effective July 24, 2009); *see also*, Exhibits "A," "B," and "C" (Declaration of Estrada, Amaro and Palacios, respectively).
[57] Exhibits "A," "B," and "C" ¶ 4 (Declaration of Estrada, Amaro and Palacios, respectively).
[58] 29 C.F.R. § 531.52; *See also*, 29 U.S.C. § 203(m).

Because Defendants violated the tip credit rule, they are unable to take advantage of its benefit, i.e. the $5.12 credit toward the $7.25 minimum wage.[59]  Consequently, Defendants are now liable for the full minimum wage without the tip credit which is $7.25 per hour.[60]  In this instance, the Defendants for the above date would be liable for $200.87[61] minus what was actually paid, $102.17[62] for a total of $98.70 for the week of August 28, 2013 to September 3, 2013.  Further, when there is a violation of the FLSA, liquidated damages *shall* be granted.[63]  Accordingly, liquidated damages are in an equal amount to lost wages, bringing the amount that the Defendants are liable for this week to Plaintiff Estrada to be approximately $197.40 plus attorney fees and costs.[64]

## B. Violation of the Notification Provision of the Tip Credit Privilege.

Further, the FLSA does not allow employers to take a tip credit "unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee . . ."[65]  Therefore, no tip credit is allowed unless the employer informs the employee, among other things, that all tips must be retained by the employee.  This has been a requirement of the *statute* at all times relevant to this lawsuit.  Applying the statute, courts in this district have always required employers to properly inform employees of the tip credit provisions.[66]  Moreover, the regulations spell out in greater details that employers must inform employees:

---

[59] *Chisolm v. Gravitas Rest. Ltd.*, CIV.A. H-07-475, 2008 WL 838760, at *4(S.D. Tex. Mar. 25, 2008); *Bernal v. Vankar Enterprises, Inc.,* 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008).

[60] The minimum wage throughout the three years prior to the filing of this lawsuit to present has always been $7.25 per hour.

[61] $82.22 ($7.25 x 11.34 hours) plus $118.65 (.565 X 210 miles) = $200.87.

[62] 11.34hours at $4.75 per hour ($53.87)  + $1.05 per delivery for 46 deliveries ($48.30) = $102.17.

[63] *Nero v Industrial Molding Corp.,* 167 F.3d 921 (5th Cir. 1999) (discussing the mandatory nature of the FLSA provision for liquidated damages).

[64] *Id.*

[65] 29 U.S.C. § 203(m).

[66] *See* Vankar, 2008 WL 791963, at *2.

(1) The amount of cash wage the employer is paying a tipped employee, which must be at least $2.13 per hour;

(2) The additional amount claimed by the employer as a tip credit, which cannot exceed $5.12 (the difference between the minimum required cash wage of $2.13 and the current minimum wage of $7.25);

(3) That the tip credit claimed by the employer cannot exceed the amount of tips actually received by the tipped employee;

(4) That all tips received by the tipped employee are to be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and

(5) That the tip credit will not apply to any tipped employee unless the employee has been informed of these tip credit provisions.[67]

Without evidence that they informed their employees of these requirements prior to relying on the tip credit, Defendants are not entitled to take a tip credit and must retroactively pay its employees the federal minimum wage.[68] In fact, Defendants did not disclose the reimbursement formula for automobile expenses to its delivery drivers, meaning that the delivery drivers were unaware of how the Defendants calculated the approximate $1.05 per delivery reimbursement amount.[69] This is important, because under (1) listed above the employer needs to inform its employee that it will pay them at least $2.13 per hour. The delivery drivers cannot be said to be informed of this, when they are unaware as to how the mileage reimbursement is being calculated. Additionally, Papa John's cannot simultaneously inform their drivers that it will pay them at least $2.13 per hour in an attempt to comply with the regulations, but at the same time inform the drivers that they will not be properly compensated for the automobile expenses incurred in delivering orders when compensating them only $1.05 or so per delivery.

Defendants violated the FLSA when they failed to notify each tipped employee about the

---

[67] 29 C.F.R. § 531.59(b).
[68] *See Bernal v. Vankar Enterprises, Inc.*, 579 F. Supp. 2d 804, 807-808 (W.D. Tex. 2008).
[69] Exhibits "A," "B," and "C" ¶ 7 (Declaration of Estrada, Amaro and Palacios, respectively).

tip credit allowance (including the amount to be credited) before the credit was utilized. That is, Defendants' delivery drivers were never made properly aware of how the tip credit allowance worked or what the amounts to be credited were.[70] More importantly, Defendants violated the notice requirement not merely by omission but by affirmatively informing their employees that their effective rate (after wage deductions and unreimbursed expenses) will be less than $2.13 per hour and that they must use their tips to cover Defendants' operating costs such as (1) uniforms, (2) cell phone, (3) automobile expenses and (3) GPS devices.[71] Further, Defendants violated the notice requirement by failing to inform the drivers that the maximum tip credit that the Defendants were entitled to take is $5.12 per hour when they affirmatively attempted to take a much larger tip credit when paying negative wages.[72]

At no time did the Defendants satisfy the informing prerequisite to take the tip credit. To be clear, *misinforming the drivers* of the tip credit provisions is a separate and distinct violation. That is, *the misinformation itself is a clear violation* that makes the Defendants ineligible to use the tip credit privilege.

Due to these numerous transgressions of the tip credit rules, the Defendants have lost their ability to rely on the tip credit and must instead account to their employees for unpaid wages based on the normal minimum wage.[73]

### C. Overtime Violation

The Defendants are unable to use the tip credit privilege for the reasons stated above, and as a result must pay the Plaintiffs and all delivery drivers at a rate of at least $10.88.[74]

---

[70] Exhibits "A," "B," and "C" ¶ 7 (Declaration of Estrada, Amaro and Palacios, respectively).
[71] Exhibits "A," "B," and "C" ¶ 7, 4 (Declaration of Estrada, Amaro and Palacios, respectively).
[72] Exhibits "M" and "O" (Team Member Checkout Reports for Estrada and Palacios, respectively); Exhibits "J" "K" and "L" (Paystubs of Plaintiff Estrada, Amaro, and Palacios, respectively).
[73] *See Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468 (5th Cir. 1979).
[74] Exhibits "J" "K" and "L" (Paystubs of Plaintiff Estrada, Amaro, and Palacios, respectively).

Defendants have lost their ability to rely on the tip credit privilege due to (1) not paying at least $5.76 per overtime hour due to the inadequate reimbursement of expenses (2) using the drivers' tips for their overhead expenses, and (3) not informing the drivers of the tip credit provisions prior to using the tip credit.[75]  Ultimately, as shown above, the Defendants' compensation policies are simply illegal.  All of Defendants' delivery drivers were subjected to these same polices.[76]

## IV.    Argument and Authorities for Conditional Certification and Notice

Section 216(b) of 29 U.S.C. provides, in relevant part:

> Any employer who violates [the minimum wage or maximum hour provisions of this title] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.  Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for an in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

District courts have the discretionary power to authorize the dispatch of notice to potential class members in a collective action.[77]  The Supreme Court has noted that early participation by the district court in the notice process serves a number of important goals.[78]  Early involvement of the district court also ensures that all potential plaintiffs receive timely notice of the pending litigation, thereby preventing the proliferation of multiple individual suits

---

[75] Exhibits "J" "K" and "L" (Paystubs of Plaintiff Estrada, Amaro, and Palacios, respectively); Exhibits "M" and "O" (Team Member Checkout Reports for Estrada and Palacios, respectively); Exhibits "A," "B," and "C" ¶ 7, 4 (Declaration of Estrada, Amaro and Palacios, respectively).

[76] Exhibits "A," "B," and "C" ¶ 4 (Declaration of Estrada, Amaro and Palacios, respectively); *see also*, Exhibits "J" "K" and "L" (Paystubs of Plaintiff Estrada, Amaro, and Palacios, respectively); see also, Exhibits "M" and "O" (Team Member Checkout Reports for Estrada and Palacios, respectively).

[77] *See Hoffmann-La Roche v. Sperling*, 493 U.S. 165 (1989); *Hipp v. Liberty National Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) ("The decision to create an opt-in class under § 216(b), like the decision to certify a class under Rule 23, remains soundly within the discretion of the district court.").

[78] *Hoffmann-La Roche Inc.*, 493 U.S. at 171, ("One of the most significant insights that skilled trial judges have gained in recent years is the wisdom and necessity for early judicial intervention in the management of litigation.").

arising against the same employer for the same violations of the FLSA.[79]

## A. Conditional Certification is the Preferred Methodology

The practice of courts in Texas has been to employ a two-stage approach to certification.[80] Many judges in the Southern District—including Judges Harmon, Atlas, Gilmore, Miller, Hughes, Lake, Rainey, Rosenthal, Werlein and this Court—have primarily utilized the two-stage collective action certification procedure.[81] Moreover, the practice employed by the Southern District of Texas has been expressly adopted by every federal appellate court that addressed the issue—both prior to and following *Mooney*.[82] Therefore, Plaintiff will address only the methodology preferred by the Southern District of Texas.

The two-stage certification process was originally set out in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). The *Lusardi* approach examines whether the named Plaintiffs and the class of potential opt-in plaintiffs are similarly situated in two separate stages. During the first stage the court grants conditional certification and notice is ordered to be served upon the opt-in class. Under *Lusardi*, conditional certification requires a Plaintiff to make a minimal showing that "(1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects

---

[79] *Id.* at 170.

[80] *See, e.g., Falcon v. Starbuck Corp.*, 580 F. Supp. 2d 528, 534 (S.D. Tex. 2005); *Allen v. McWane*, 2006 WL 3246531 (E.D. Tex. Nov. 2006).

[81] *Guzman v. Varco Intern., Inc.*, CIV.A. H-01-4000, 2002 WL 32639237 (S.D. Tex. May 30, 2002) (J. Gilmore); *Nieddu v. Lifetime Fitness, Inc.*, CIV.A. H-12-2726, 2013 WL 5530809 (S.D. Tex. Sept. 30, 2013) (J. Harmon); *Villatoro v. Kim Son Rest., L.P.,* 286 F. Supp. 2d 807, 810 (S.D. Tex. 2003) (J. Atlas); *McKnight v. D. Houston, Inc.,* 756 F. Supp. 2d 794, 800 (S.D. Tex. 2010) (J. Rosenthal); *Albanil v. Coast 2 Coast, Inc.,* CIV.A. H-08-486, 2008 WL 4937565 (S.D. Tex. Nov. 17, 2008) (J. Miller); *Page v. Nova Healthcare Mgmt., L.L.P.,* CIV.A. H-12-2093, 2013 WL 4782749 (S.D. Tex. Sept. 6, 2013) (J. Lake); *Andel v. Patterson-UTI Drilling Co., LLC,* 280 F.R.D. 287, 293 (S.D. Tex. 2012) (J. Rainey); *Johnson v. TGF Precision Haircutters, Inc.,* 319 F. Supp. 2d 753, 754 (S.D. Tex. 2004) (J. Werlein); *McCarragher v. Ryland Group, Inc.,* CIV.A. 3-11-55, 2012 WL 4857575 (S.D. Tex. Oct. 11, 2012) (J. Costa).

[82] *See, e.g., Thiess v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *King v. GE Co.*, 960 F.2d 617, 621 (7th Cir. 1992); *see also, Villatoro v. Kim Son Rest., L.P.*, 286 F.Supp.2d at 809-10 (S.D. Tex. 2003) (discussing appellate decisions regarding the proper approach to certifying a collective action).

given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit."[83]  *Albanil v. Coast 2 Coast, Inc.*, 2008 WL 4937565, at *6 (S.D.Tex. Nov.17, 2008) (quoting *Maynor v. Dow Chem. Co.*, 2008 WL 2220394, at *6 (S.D.Tex. May 28, 2008)).

A court's decision in the first step of a *Lusardi* analysis generally looks to only pleadings and affidavits supplied by the parties because generally no discovery has been conducted.[84] "[**T**]**he standard is lenient and typically results in conditional certification**."  *Barajas v. Acosta*, 2012 WL 1952261 (S.D. Tex. May 30, 2012)(*emphasis added*).  "[C]ourts do not review the underlying merits of the action in determining whether to conditionally certify."  *Id.*  (quoting *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914 (D. Ariz. 2010)).  Conditionally certifying the case at this point allows it to continue through discovery as a collective action.  The second step in the *Lusardi* test typically comes at the behest of the defendant on a motion to decertify.  *Flowers v. MGTI, LLC* , 2012 WL 1941755 at *3 (S.D. Tex. May 29, 2012).  To resolve the second step of *Lusardi*, the court must make a factual determination that a class of similarly situated plaintiffs exists but the standard during the first, pre-discovery, step is only that a reasonable basis exists for the existence of the class.  *Id.*  During the certification phase no factual finding of similarly situated is required. At this stage, the Plaintiffs need only to show a reasonable basis for determining the class exists.

**B. Under *Lusardi*, a class of similarly situated employees exists; therefore, conditional certification of the collective action is proper.**

Under the first step of the *Lusardi* analysis, a plaintiff has the burden to show that "(1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that

---

[83] Some courts, however, have rejected the third, non-statutory element of this test. *See, e.g., Dreyer v. Baker Hughes Oilfield Operations, Inc.*, 2008 WL 5204149, at *3 (S.D.Tex. Dec. 11, 2008); *Heckler v. DK Funding, LLC*, 502 F.Supp.2d 777, 780 (N.D.Ill.2007).  But, as will be shown, a other delivery driver have expressed a desire to join the collective action to Plaintiffs and one other delivery driver has already submitted his individual consent paperwork to join.
[84] *McCarragher*, 2012 WL 4857575 * 3.

14

those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit." *Aguirre v. SBC Communication, Inc.*, 2006 WL 964554, at *5 (S.D. Tex. 2006). The Plaintiffs can satisfy this burden.

### 1. There is a reasonable basis for crediting the assertions that other aggrieved individuals exist.

The determination that aggrieved individuals exist is made using a fairly lenient standard. *See, e.g., Cameron-Grant v. Maxim Healthcare Servs. Inc.*, 347 F.3d 1240, 1243 n. 2 (11th Cir. 2003). A plaintiff generally establishes that a potential class exists through allegations or a complaint supported with appropriate affidavits. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir.1996); *Prater v. Commerce Equities Management Co., Inc.*, 2007 WL 4146714, at *5 (S.D.Tex. Nov. 19, 2007) (reviewing allegations and affidavits in finding that other aggrieved plaintiffs exist).

Here the two representative Plaintiffs and one opt-in provided declarations detailing the manner in which they are compensated.[85] In those declarations, Plaintiffs have provided sufficient evidence that the pay practices at issue in this action are pervasive and companywide.[86] Specifically, current and past employees of Defendants know that the improper pay practices are experienced by others. For example, Plaintiff Estrada and Palacios worked at two of the Papa John's locations operated by Defendants.[87] They experienced the same improper pay practices at both of these locations.[88] Furthermore, along with their affidavits, the Plaintiff Estrada and opt-in Palacios provided paystubs and Team Member Checkout Reports showing the clear violations

---

[85] Exhibits "A," "B" and "C," (Declaration of Estrada, Amaro and Palacios, respectively).
[86] Exhibits "A," and "C," ¶ 9 (Declaration of Estrada, and Palacios, respectively); Exhibit "B" ¶8 (Declaration of Amaro).
[87] Exhibits "A," and "C" ¶ 6 (Declaration of Estrada and Palacios).
[88] Exhibits "A," ¶ 6 (Declaration of Estrada).

committed by Defendants.[89]   Plaintiff Amaro likewise provides paystubs in support of his affidavit.[90]   Defendants fail to properly compensate the Plaintiff and opt-ins for automobile expenses at the IRS guidelines and such practice is companywide.

### 2.   The aggrieved employees are similarly situated to the named Plaintiffs in relevant respects given the claims asserted.

The collective action provision of the FLSA allows one or more employees to bring an action for unpaid wages and unpaid overtime "on behalf of themselves and other employees similarly situated."  29 U.S.C. § 216(b).

"For the class representative to be considered similarly situated to the potential opt-in class members, the class representative must be similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Ryan v. Staff Care, Inc*., 497 F.Supp.2d 820, 825 (N.D. Tex. 2007) (citing *Dybach v. State of Florida Dept. of Corrections*, 942 F.2d 1562, 1567–68 (11th Cir.1991)). Plaintiffs "need only show that their positions are similar, not identical, to putative plaintiffs."[91]

Resolution of this prong of *Lusardi* is straightforward.  The named Plaintiffs and the employees upon whom they seek to serve notice are all delivery drivers.  As such, they have identical job duties.  As delivery drivers, their primary duties are to confirm that the product being delivered is what the customer ordered, take the product ordered to Defendants' customers, deliver the product to Defendants' customers, and return to the Papa John's store to pick up

---

[89] Exhibits "M" and "O" (Team Member Checkout Reports for Estrada and Palacios, respectively).

[90] Exhibit "K" (Amaro's Paystubs).

[91] *Jesiek v. Fire Pros, Inc*., 275 F.R.D. 242, 246 (W.D. Mich.2011); *see also England v. New Century Financial Corporation*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005) ("Similarly situated does not necessarily mean identically situated." (footnote omitted)). "Slight differences in job duties or functions do not run afoul of the similarly situated requirement." *Tolentino v. C & J Spec–Rent Services, Inc*., 716 F. Supp. 2d 642, 651 (S.D. Tex. 2010); *see also Johnson v. Big Lots Stores, Inc.*, 2007 WL 5200224, at *9 (E.D. La. 2007) ("The Court recognizes that there are some differences between plaintiffs' employment experiences as assistant managers. But the terms of the FLSA's collective action provision allow for differences. To pursue claims against an employer, plaintiffs must be *similarly situated*. They do not have to be *identically situated*.") (emphasis in original).

another order.[92] Further, when in the store, delivery drivers have the same primary duties of cleaning, stocking, mopping, sweeping, and breaking down boxes among other things.[93]

The class of potential opt-ins are similarly situated in the following ways:

i   The named Plaintiffs and the opt-in class are all delivery drivers;[94]

i   The named Plaintiffs and the opt-in class all deliver Defendants' customers' orders to a location the customer specifies;[95]

i   The named Plaintiffs and the opt-in class all are paid for "road hours" and "store hours" at different rates;[96]

i   The named Plaintiffs and the opt-in class all logged the time they worked in the store and logged the time they worked delivering Defendants' customers' orders;[97]

i   The named Plaintiffs and the opt-in class are all victims of a systematic, companywide misapplication of the tip credit rules;[98]

i   The named Plaintiffs and the opt-in class all were inadequately reimbursed for automobile expenses;[99]

i   The named Plaintiffs and the opt-in class were all paid per delivery and not per mileage for automobile expenses;[100]

i   The named Plaintiffs and the opt-in class were all misinformed of the application of the tip credit;[101]

---

[92] *See* Exhibits "A," "B" and "C," ¶ 5 (Declaration of Estrada, Amaro and Palacios, respectively).
[93] *See* Exhibits "A," "B" and "C," ¶ 3 (Declaration of Estrada, Amaro and Palacios, respectively).
[94] Exhibits "A," "B" and "C," ¶ 2 (Declaration of Estrada, Amaro and Palacios, respectively).
[95] Exhibits "A," "B" and "C," ¶ 2 (Declaration of Estrada, Amaro and Palacios, respectively).
[96] Exhibits "A," "B" and "C," ¶ 3, 8 (Declaration of Estrada, Amaro and Palacios, respectively); Exhibits "J" "K" and "L" (Paystubs of Plaintiff Estrada, Amaro, and Palacios, respectively); see also, Exhibits "M" and "O" (Team Member Checkout Reports for Estrada and Palacios, respectively).
[97] Exhibits "J" "K" and "L" (Paystubs of Plaintiff Estrada, Amaro, and Palacios, respectively); *see also*, Exhibits "M" and "O" (Team Member Checkout Reports for Estrada and Palacios, respectively); *see also*, Exhibits "A," "B" and "C," ¶ 3 (Declaration of Estrada, Amaro and Palacios, respectively).
[98] Exhibits "A," and "C," ¶ 9 (Declaration of Estrada, and Palacios, respectively); Exhibit "B" ¶ 8 (Declaration of Amaro).
[99] Exhibits "A," and "C," ¶ 9 (Declaration of Estrada, and Palacios, respectively); Exhibit "B" ¶ 8 (Declaration of Amaro); Exhibits "J" "K" and "L" (Paystubs of Plaintiff Estrada, Amaro, and Palacios, respectively); see also, Exhibits "M" and "O" (Team Member Checkout Reports for Estrada and Palacios, respectively).
[100] Exhibits "A," "C," ¶ 5, 9 (Declaration of Estrada, and Palacios, respectively); Exhibit "B" ¶ 5, 8 (Declaration of Amaro).
[101] Exhibits "A," and "C," ¶ 9, 8 (Declaration of Estrada, and Palacios, respectively); Exhibit "B" ¶ 8, 7 (Declaration of Amaro).

i    The named Plaintiffs and the opt-in class were not disclosed the method of calculating their automobile reimbursement.[102]

i    The named Plaintiffs and the opt-in class all used their tips to pay for gasoline used in connection with their job duties of delivering Defendants' customers' orders;[103]

i    The named Plaintiffs and the opt-in class were not reimbursed by Defendants for cell phone usage, GPS devices, and/or uniforms; and[104]

i    The named Plaintiffs and the opt-in class all had to perform non-tip eligible work while working inside the Papa John's store.[105]

Cases such as this are ideally suited for collective treatment—the employees are a homogenous group with highly meritorious claims. Some courts have stated that to proceed collectively, employees must show they were affected by a common policy, plan, pattern or practice. *See, e.g., O'Brien v. Ed Donnelly Enters., Inc.*, 2006 WL 3483956, at *3 (S.D. Ohio Nov.30, 2006) ("Plaintiffs must demonstrate that the Defendants had a common policy or plan in violation of the FLSA that negatively impacted the original and opt-in Plaintiffs."). Just such a plan, policy, or practice is implicated in this matter because the Defendants' delivery drivers were, as a group, compensated based on a scheme that utilized an improper tip credit, did not properly reimburse automobile expenses, utilized delivery drivers' tips for their operational cost (gasoline) and were misinformed about the tip credit provisions—it is the Defendants' perversion of the tip credit rules that forms the basis of this case. As such, all the delivery drivers were victim of the same illegal policy.

**3.    Other delivery drivers working for the Defendants want to opt-in to this lawsuit.**

---

[102] Exhibits "A," and "C," ¶ 8 (Declaration of Estrada, and Palacios, respectively); Exhibit "B" ¶ 7 (Declaration of Amaro).
[103] Exhibits "A," "B" and "C," ¶ 4 (Declaration of Estrada, Amaro and Palacios, respectively).
[104] Exhibits "A," "B" and "C," ¶ 4 (Declaration of Estrada, Amaro and Palacios, respectively).
[105] Exhibits "A," "B" and "C," ¶ 3 (Declaration of Estrada, Amaro and Palacios, respectively).

Some courts require a showing that "at least a few individuals seek to join the lawsuit."[106] Many other courts have determined that plaintiffs do not need to present evidence that potential opt-in plaintiffs desire to opt in. *See, e.g., Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242, 247 (W.D. Mich. 2011) ("Plaintiff's failure to provide evidence that potential opt-in plaintiffs' desire to opt-in is not fatal to their motion."); *Villarreal v. St. Luke's Episcopal Hospital*, 751 F.Supp.2d 902, 915 (S.D.Tex.2010) ("The court agrees that a plaintiff need not present evidence at this stage of the third element, that aggrieved individuals actually want to opt in to the lawsuit."). However, on occasion, these courts may still require that plaintiffs adequately explain their reasons for not providing evidence that additional plaintiffs desire to opt-in[107] or make some showing that "there may be other aggrieved individuals to whom a class notice should be sent." *Villarreal*, 751 F.Supp.2d at 916.

In this case, there are two named Plaintiffs, Mr. Estrada and Mr. Amaro and one opt-in Plaintiff, Edgar Palacios, who submitted their consents to sue.[108] All three of these individuals provided declarations in support of class notice. In their declarations, all of these individuals state that additional delivery drivers at the Defendants' restaurants would join if provided the opportunity, especially if they could be assured that they would not be retaliated against.[109] *See, Pedigo v. 3003 S. Lamar, LLP*, 666 F. Supp. 2d 693, 698 (W.D. Tex. 2009) ("However, contrary to Defendant's argument, the joinder of additional plaintiffs after the inception of the case is persuasive evidence that a putative class does exist.") (*citing, Shaffner v. Cash Register Sales &*

---

[106] *See, e.g., Simmons v. T–Mobile*, 2007 WL 210008, at *9 (S.D.Tex. Jan.24, 2007) ("Others' interest in joining the litigation is relevant to deciding whether or not to put a defendant employer to the expense and effort of notice of a conditionally certified class of claimants in a collective action.").
[107] *Jesiek*, 275 F.R.D. at 247
[108] Exhibits "A," "B" and "C," (Declaration of Estrada, Amaro and Palacios, respectively).
[109] Exhibits "A," and "C," ¶ 10 (Declaration of Estrada, and Palacios, respectively); Exhibit "B" ¶ 9 (Declaration of Amaro).

*Serv. of Houston,* 2006 WL 1007542, at *1 (S.D.Tex. Apr. 17, 2006)). It is a near certainty that

if the remainder of the workforce received an invitation to join, many more would join.[110]

### C. Courts in this district have afforded relief to delivery drivers under facts nearly identical to this case.

Violations of the tip credit rule in the restaurant industry are common and many courts in

this district have granted conditional certification to plaintiffs on facts very similar to this case.

ı *Perrin v. Papa John's Intern., Inc.,* 4:09CV01335 AGF, 2011 WL 4089251 (E.D. Mo. Sept. 14, 2011) (granting conditional certification for ***Papa John's delivery drivers*** who claimed a minimum wage violation due to improper automobile reimbursements).

ı *Smith v. Pizza Hut, Inc.,* No. 09-CV-01632-CMA-BNB, 2012 WL 1414325 (D. Colo. Apr. 21, 2012) (granting conditional certification for ***Pizza Hut delivery drivers*** who claimed a minimum wage violation due to improper automobile reimbursements).

ı *Darrow v. WKRP Mgmt., LLC,* No. 09-CV-01613-CMA-BNB, 2012 WL 638119 (D. Colo. Feb. 28, 2012) (granting conditional certification for ***Pizza Hut delivery drivers*** who claimed a minimum wage violation due to improper automobile reimbursements).

ı *Wass v. NPC Intern., Inc.,* 09-2254-JWL, 2011 WL 1118774 (D. Kan. Mar. 28, 2011) (granting conditional certification for ***Pizza Hut delivery drivers*** who claimed a minimum wage violation due to improper automobile reimbursements).

ı *Luiken v. Domino's Pizza, LLC,* CIV.09-516 (DWF/AJB), 2010 WL 2545875 (D. Minn. June 21, 2010) (granting conditional certification for ***Domino's delivery driers*** who claimed a minimum wage violation due to improper automobile reimbursements).

ı *Bass v. PJComn Acquisition Corp.,* No. 09-CV-01614-REB-MEH, 2010 WL 3720217 (D. Colo. Sept. 15, 2010) (granting conditional certification to ***Essential Pizza delivery drivers*** who claimed a minimum wage violation based upon improper automobile reimbursement and uniform, cell phone, and other job related expenses).

ı *Covey v. Iron Cactus,* Case 1:12-cv-00111-SS, Doc. 43, Western District of Texas Austin Division (May 18, 2012) (granting conditional certification based on an alleged tip pool violation);

---

[110] Statistically, participation rates in collective actions, where an employee must affirmatively opt-in to the suit, range from 15-30%, at least when the underlying FLSA case is not backed by a labor union. *See* Matthew W. Lampe & E. Michael Rossman, *Procedural Approaches for Countering the Dual-Filed FLSA Collective Action and State-Law Wage Class Action,* Lab. Law. Winter/Spring 2005 311, 313-14. The Plaintiffs here estimate the total number of affected delivery drivers to be one thousand—approximately twenty at each restaurant.

- *Gustavus v. Cazos, Inc.*, 774 F. Supp.2d 856 (S.D. Tex. 2011) (holding that if the employer does not meet the requirements of the FLSA's tip credit provision, it must pay each employee the full minimum wage required under the FLSA);

- *Eggelston v. Sawyer Sportsbar, Inc.*, 2010 WL 2639897 (S.D. Tex. June 28, 2010) (granting conditional certification based on alleged tip pool violations and failure to pay the required cash wage of $2.13 an hour for an employer utilizing the tip credit);

- *Plewinski v. Luby's Inc.*, 2010 WL 1610121 (S.D. Tex. Apr. 21, 2010) (denying defendant's motion to decertify in a case involving allegations of an improper tip pool—the plaintiffs worked in three different restaurants and alleged that they were required to spend more than 20% of the time at work on non-tip producing activities);

- *Chisolm v. Gravitas Restaurant Ltd.*, 2008 WL 838760 (S.D. Tex. Mar. 25, 2008) (granting summary judgment in favor of plaintiffs on the issue that a defendant's policy of deducting the cost of broken glasses violated the tip credit rules);

**D. The proposed notice is timely, accurate, and informative. The notice should be sent by regular mail and email.**

A collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-La Roche*, 493 U.S. at 170. Use of court-authorized notice also prevents "misleading communications."

The notice attached hereto as Exhibit "E" is "timely, accurate, and informative" as required. It provides notice of the pendency of this action and describes how an individual wishing to join the suit may do so. The legal claims that form the basis of this lawsuit are accurately and neutrally described. The potential opt-ins are advised that they are not required to participate. The notice provides clear instructions on how to opt-in and accurately states the prohibition against retaliation for participation in a FLSA action. *See* 29 U.S.C. § 215(a)(3).

The Plaintiffs propose that this notice and consent forms be mailed by first class mail and by electronic mail[111] to all the potential opt-in deliver drivers employed at any time during the

---

[111] *See In re Deloitte & Touche, LLP Overtime Litig.*, 2012 WL 340114 at *2 (S.D.N.Y. Jan. 17, 2012) ("In the present age, however, communication through email is the norm," and this Court should "not view the disclosure of

three year period before this Motion was granted by the Court to the present.[112] Counsel for the Plaintiffs will oversee the mailing, regular and electronic, of such notices and pay the up-front charges for this endeavor (postage, copying, etc.). Those class members interested in participating would be required to return their consent forms to Plaintiffs' counsel for filing with this Court within 75 days of the mailing.

The Plaintiffs further request that the opt-in plaintiffs be given the option to execute their consent paperwork online through an electronic signature service. This service allows the opt-ins to view their consent forms electronically by clicking a link in an encrypted email designated only for that employee.[113] Upon doing so, an employee is taken to a website where they can complete a series of intake questions, review the document they are signing, then click a box indicating he or she understands the consent form. They can then sign the document with a mouse similar to the way grocery store customer's sign for a credit card transaction at the checkout lane. This process instantaneously provides a PDF copy of the form they signed and makes it accessible to Plaintiffs' counsel who, in turn will file it with the court in the same

---

email addresses to class counsel as being unduly intrusive on the privacy and personal interests of class members."). *White v. Integrated Elec. Technologies, Inc.,* 2013 WL 2903070 at *9 (E.D. La. June 13, 2013) ("Plaintiffs have submitted ample authority indicating that federal district courts, including courts in the Eastern District of Louisiana and the Fifth Circuit, frequently utilize e-mail to provide notice of collective actions to potential class members."); *Butler v. Directsat USA, LLC, et al,* 876 F. Supp. 2d 560, 575 ("Plaintiffs may, therefore, notify other potential plaintiffs of this action by first-class mail and by email using the court-approved notice appended to this memorandum opinion."); *Pippins v. KPMG LLP,* 2012 WL 19379, at *14 (S.D.N.Y. January 3, 2012) ("[G]iven the reality of communications today ... the provision of email addresses and email notice in addition to notice by first class mail is entirely appropriate"); *Lujan v. Cabana Mgmt., Inc.,* 2011 WL 3235628, at *3 n. 3 (E.D.N.Y. July 27, 2011) ("[T]he Court sees email as a relatively unobtrusive option" for providing notice to class members); *Denney v. Lester's, LLC,* 2012 WL 3854466 at *4 (E.D. Mo. Sept. 5, 2012) ("Court finds fair and proper notice to current and former servers will be accomplished by regular mail, electronic mail..."); *Santiago v. Amdocs, Inc.,* 2011 WL 6372348 * 8 (N.D. Cal. Dec. 19, 2011) (Notice shall be "disseminated via electronic mail.."); *Altier v. Worley Catastrophe Response, LLC,* 2012 WL 161824, at *27 (E.D.La. Jan.18, 2012) (providing notice of proposed settlement agreement in a collective action via e-mail); *Nobles v. State Farm Mut. Auto. Ins. Co.,* 2011 WL 3794021, at *10 (W.D.Mo. Aug.25, 2011).

[112] Email notice has become a common form of notification in FLSA cases. *See Phelps v. MC Communications, Inc,* 2011 WL 3298414, at *6 (D. Nev. Aug. 1, 2011).

[113] *See* Exhibit "Q," Sample Electronic Opt-in Form.

manner as those forms received through regular mail. This process merely provides an additional option for signing the consent form.

Courts have approved the use of online electronic signature opt-in forms.[114] Judge Reed O'Connor in the Northern District of Texas recently authorized just such a supplemental method of signing the consent form for a group of 4,000 workers. *See* Ex. 11, *Jones v. JGC Dallas LLC*, Case: 3:11-cv-02743-O-BH, Doc. No. 141, (January 23, 2013), Northern District of Texas, Dallas Division.

Further, under the Tex. Bus. & Com. Code Ann. § 322 *et. al.* (Vernon), the law recognizes the validity of electronic signatures. Specifically, it states that a "signature may not be denied legal effect or enforceability solely because it is in electronic form." Tex. Bus. & Com. Code Ann. § 322.007 (Vernon). It proceeds to state that "if a law requires a signature, an electronic signature satisfies the law." In this instance, the FLSA requires a plaintiff to file a written consent form in order to join the lawsuit. *See* 29 U.S.C.A. § 216 (West) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *See also*, 29 U.S.C.A. § 256 (West). Consequently, Texas law allows for the use of electronic signatures to be used to execute FLSA consent forms.

Finally, Plaintiffs propose that notice be sent to the putative opt-in Plaintiffs twice, both times via mail and electronic mail. The first mailing would occur within ten (10) days of receiving the list of potential opt-in plaintiffs from the Defendants. The second mailing would occur thirty (30) days after the initial mailing to those putative Plaintiffs who have not opted-in.

---

[114] *White,* 2013 WL 2903070 at *8 (E.D. La. June 13, 2013) ("allow class members to execute electronic consent forms"); *Kelly v. Bank of Am., N.A.,* 2011 WL 7718421at *2 (N.D. Ill. Sept. 23, 2011) ("[C]lass members may submit a Consent to Join form for this case by electronically providing their name, date of birth, and last four digits of their social security number."); *Jones,* 2012 WL 6928101 at *5 ("Class members should be provided the option of executing their consent forms online via an electronic signature service.");

### E. The proposed discovery is essential for service of timely notice.

Discovery of a mailing list and contact information for class members in a computer readable format is a necessary component of notice in collective actions. Defendants should therefore be ordered to produce the names, all known addresses, all phone numbers (home, mobile, etc.), dates of birth, all known email addresses (work and personal), social security numbers, and dates of employment for all the class members employed within the three years preceding the Court's granting this Motion to the present.[115] All of the requested information is necessary, including dates of birth, to allow Plaintiffs sufficient information to confirm current addresses and/or to locate those persons who may have moved from their last known addresses. Production of all known personal and business email addresses is particularly important because such contact information does not change when a person moves. Without this information, the notices are more likely to be returned due to outdated or inaccurate addresses. This in turn will result in Plaintiffs requesting an extension of the opt-in period to accommodate those class

---

[115] *Castillo v. Hernandez*, 2010 WL 4595811 at *7 (W.D. Tex. Nov. 4, 2010) (ordering Defendants to produce **telephone numbers and email addresses**; "District courts commonly grant expedited discovery of such information to Plaintiffs in order to enable efficient joinder of interested parties at an early stage in the case."). *See also, Sims v. Housing Authority City of El Paso*, 2010 WL 2900429, at *5 (W.D.Tex. July 19, 2010) (order granting expedited discovery of information "to be used to identify and contact potential class members"); *See Eggelston v. Sawyer Sportsbar, Inc.,* 2010 WL 2639897, at *4 (S.D.Tex. June 28, 2010) (order conditionally certifying class of bartenders and granting expedited discovery of **telephone numbers and emails**); *McCarragher v. Ryland Group, Inc.*, 2012 WL 4857575 at *6 (S.D. Tex. Oct. 11, 2012) (Defendant "must provide Plaintiffs with … **e-mail addresses, telephone numbers** …of the members of the collective action class."); *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 996 (E.D. Tex. 2011) ("**ORDERS** the Defendants to provide…names, job titles, addresses, **telephone numbers**, Social Security numbers, and **email addresses**, if available, of the potential class members."); *Beall v. Tyler Technologies, Inc.*, 2009 WL 1766141 at *4 (E.D. Tex. June 23, 2009) ("orders defendants to provide the plaintiffs' counsel with the names, job titles, addresses, **telephone numbers**, Social Security numbers, and **email addresses** ..."); *Luvianos v. Gratis Cellular, Inc.*, 2012 WL 6737498 (S.D. Tex. Dec. 10, 2012) report and recommendation adopted, 2012 WL 6743559 at *10 (S.D. Tex. Dec. 28, 2012) ("the court finds that disclosure to Plaintiffs' counsel of employees' … **phone numbers, and email addresses** … is not unduly invasive."); *Tolentino v. C & J Spec-Rent Services Inc.*, 716 F. Supp. 2d 642, 655 (S.D. Tex. 2010) ("orders that Defendant produce …**phone numbers, and e-mail addresses**..."); *Davis v. Mostyn Law Firm, P.C.*, 2012 WL 163941 at *11 (S.D. Tex. Jan. 19, 2012) ("orders that Mostyn shall provide …all **email addresses (personal and work)** for all class members as defined above."); *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 473 (S.D. Tex. 2012) ("The Court requires Defendant to produce, in usable electronic format, within seven days of the date of the Order: the names, last known personal and work addresses, personal and work **email addresses**, and dates of work …").

members, thereby delaying the timely resolution of this matter. In addition, providing phone numbers allows the Plaintiffs to verify the accuracy of the list by contacting former employees to determine if they are aware of anyone who was subject to the same payroll practice but whose name was omitted from the list.

## V.      Conclusion

For each day that passes, the statute of limitations swallows another day's worth of minimum wage and overtime claims from this class of delivery drivers and the Defendants' are unjustly enriched by that same amount. The information that the proposed notice contains is essential to allow the Defendants' delivery drivers to act expeditiously to protect their interests. Without this notice, they will remain unaware of the pendency of this action or their right to opt-in, and they would be powerless to prevent their claims from becoming untimely.

At the current stage of this suit, the Plaintiffs have come forward with a sufficient factual showing to demonstrate to this Court that a class of similarly situated plaintiffs exists. Therefore, this Court should grant Plaintiffs' Motion and provide the Plaintiffs with the following relief:

1. Conditionally certify this case as a collective action under 29 U.S.C. § 216(b) with respect to all delivery drivers employed by Houston Pizza Venture, LP, d/b/a Papa John's, HPV-C LLC d/b/a Papa John's, HPV Staff, LLC, Frank Carney, Martin Hart, and Keith Sullins ("Defendants") from ___(three years prior to the Granting of the Collective Motion)_____ to the present;

2. Authorize the mailing of the proposed notice and consent forms (Exs. E and F) to all of Defendants' current and former delivery drivers during the applicable time period via regular mail and email;

3. Authorize the execution of consent forms electronically;

4. Approve that notice be sent to the putative opt-in plaintiffs twice, both times via mail and electronically: the first time within seven days of receiving the list of putative opt-in plaintiffs and a second time 30 days after dispatch of the first notice;

5. Require that Defendants produce the names and all known addresses, social security numbers, all known phone numbers, dates of birth, dates of employment, and all known email addresses for all of the Defendants' delivery drivers within ten (10) days from the Court granting this Motion, so that notice may be implemented.

Respectfully submitted,

KENNEDY HODGES, L.L.P.

By: /s/   Galvin B. Kennedy
Galvin B. Kennedy
*Attorney-in-Charge for Plaintiffs*
State Bar No. 00796870
Federal Bar No. 20791
KENNEDY HODGES, LLP
711 West Alabama Street
Houston, Texas 77006
Telephone: 713-523-0001
Facsimile:  713-523-1116
Gkennedy@kennedyhodgs.com

OF COUNSEL:
Beatriz Sosa-Morris
State Bar No. 24076154
Federal Bar No. 1552137
KENNEDY HODGES, LLP
711 W. Alabama Street
Houston, Texas 77006
Telephone: 713-523-0001
Facsimile:  713-523-1116
Bsosamorris@kennedyhodges.com

**CERTIFICATE OF CONFERENCE**

Pursuant to the Local Rules of this Honorable Court, I have conferred with opposing counsel concerning this motion and defense counsel is opposed to this motion.

/s/ Beatriz Sosa-Morris
Beatriz Sosa-Morris

**CERTIFICATE OF SERVICE**

This is to certify that on November 21, 2013 a copy of the foregoing instrument was served upon all parties via the Court's electronic case filing system.

/s/ Beatriz Sosa-Morris
Beatriz Sosa-Morris